## COMMUNITY NATURAL GAS CO. v. ALLEN et ux. (No. 3647.)

Court of Civil Appeals of Texas. Texarkana. March 8, 1929.

Rehearing Denied March 28, 1929.

B. M. McMahan, of Greenville, and Harry P. Lawther, of Dallas, for appellant.

Crosby & Estes, of Greenville, and Joe E. Estes, of Commerce, for appellees.

LEVY, J. The suit was brought by appellees, husband and wife, against the city of Commerce, the Lone Star Gas Company, and the appellant company, to recover damages for personal injuries occasioned to Mrs. Allen through alleged negligent acts. The appellees claimed in the petition that, with the intention of making a social call on the family of Mr. Fortenberry, they stopped their automobile at the street curb on Park street in front of the home of Mr. Fortenberry, and that in alighting from the car Mrs. Allen stepped into an open ditch which was unguarded and unlighted, recently dug for the purpose of laying down gas pipes. The negligence alleged was in leaving the excavation open and exposed at nighttime, unguarded and unblocked, and without light to warn of the danger. The appellant company specially pleaded, besides general denial, both negligence and contributory negligence on the part of Mrs. Allen proximately causing and contributing to cause her injury. It is unnecessary to set out the pleadings of the other two defendants, inasmuch as there is no appeal from the judgment in their favor. There was a' trial before a jury, who, on the general charge of the court, returned a verdict in favor of the appellees.

The points presented on appeal are: (1) The requested peremptory instruction to the jury should have been given. (2) The verdict of the jury was so contrary to the evidence as to be clearly wrong. (3) The amount of damages awarded is excessive.

The following facts appear to be undisputed: On January 22, 1927, the city of Commerce granted a franchise to the appellant company for the construction and operation of a gas distributing plant in the city. The right was granted to lay gas mains and supply pipes in the streets, alleys, and parkways in the city. It was specially provided that when the company made excavations in any street, alley, or parkway for the purposes of laying its mains or pipes, "the public shall be protected by barriers and lights placed, erected and maintained by the grantee." In March, 1927, the company was putting down its mains and pipes to supply the public with gas. Excavation was made along Park street in which to lay pipes. Park street runs north and south and has a concrete pavement with asphalt top. There is a concrete curb on each side of the street pavement about 6 inches high. There is a parkway between the curb and the cement sidewalk of "about three feet" in width. The excavation was made in the parkway within 6 inches of the curb, about 1½ feet wide, and 3 feet deep, running the length of the block on Park street next to the cross street of Sycamore. The dirt taken from the excavation was thrown up in an embankment towards the sidewalk. The gas pipes were laid in the bottom of the excavation; but as the work had not been yet completed, the excavation was left open. The residence of Mr. Fortenberry is located near the middle of the block. Mr. and Mrs. Allen live at Fairlee, seven miles from Commerce. On the evening of March 31, 1927, Mr. and Mrs. Allen left their home in Fairlee in an automobile, to drive to Commerce for

a social call on the Fortenberry family. They arrived there after dark. The Fortenberry family were away attending a social. The appellees then returned to the Fortenberry residence about 8:30 o'clock at night. The automobile was stopped in Park street, next to the curb and in front of Mr. Fortenberry's residence. Mrs. Allen was seated in the automobile, on the side next to the curb.

The evidence pertaining to the fall into the ditch:

Mrs. Allen testified: "When the car stopped I got out first, before my husband did. I first stepped on the running-board and then stepped into the ditch. I did not know that there was a ditch there, and I stepped off of the car as I usually do. I intended to step on the ground between the curb and the sidewalk. At that time I did not know there was an opening there between the curb and the sidewalk. No lights were there displaying that to me. It was dark there. When I stepped off the running-board of the car I stepped into the ditch and fell over and just lay there. I could not get out. My husband was still in the car at that time. When I fell into the ditch I holloed, 'Oh!' Then my husband came to me. He started to lift me up and I was so sick I asked him to wait a little until I felt better. I told him I was about to faint, and for him to wait a little until I felt better. He did wait a little and then lifted me out of the ditch, and I went into the house. * * * Both of my feet did not go into the ditch. My right foot went into the ditch. My left leg did not go down into the ditch at all; it was my right leg. My whole body did not go down into the ditch. When my right leg went into the ditch I kind of fell over on this side; my right side hit something—sidewalk or something—and my left leg hit something in the ditch."

Mr. Allen testified: "After I stopped the car she got out. I did not notice her after she got out until she holloed. It was dark there where she fell. My attention was attracted to her when she holloed, 'Oh, I fell in something!' I got out immediately to assist her. I took hold of her to raise her up, and she says, 'Wait,' she was 'going to faint.' I waited a couple of minutes, then assisted her to her feet. I took hold of her arm and raised her up. We went into the house."

The appellant proved:

Mrs. Fortenberry testified: "The first time I saw Mrs. Allen was when she came walking up the sidewalk towards my home. I just turned on my hall light, and, it lighted the walkway. Mr. Allen was with her. They were just walking along to my house. I don't think he had hold of her. I have known her all of my life. She was not walking up to the walk any different to the way she did any other time I saw her. She was walking in as she usually did. When she and Mr. Allen

got into the house they asked about Mr. Fortenberry and when he would be in. At that time neither Mrs. Allen nor Mr. Allen said anything about Mrs. Allen having fallen in the ditch; they did not mention it. Mrs. Allen did not have any mud on her clothes, that I noticed. I did not notice any mud on her shoes, stockings, her arms or dress, or anywhere. I did not notice that she was wet. * * * It rained that afternoon, and the workmen quit working in the ditch. I know it rained; it rained pretty hard. I know there was water in the ditch, because I saw it. I expect it rained on the embankment of dirt; it rained all around my house."

Mrs. Fortenberry further said: "The first time I heard of Mrs. Allen falling in the ditch was next morning when she came to my house. She said she had fallen in the ditch. She showed me the place where she was hurt. She rolled down her hose and showed me a place on her limb. There was a little bruised place—swollen up and kind of bruised below the knee. That morning she complained of feeling awfully and suffering awful pain. She came to my house the next Saturday and stayed all night and Sunday. I saw her leg, and it looked like it did the first time I saw it—all puffed up and dark like. She was complaining of pain and suffering pain."

Mr. Fortenberry testified: "The night before the alleged injury I filled up the place in front of my house, a little place so that I could get on the sidewalk—so I could walk out and across. I filled it from the sidewalk out. I mean that I threw the dirt from the sidewalk into the ditch. I made a passway in the dirt next towards the sidewalk so that I could get to the street. I got across the ditch by filling it up where the passageway was. That was for my own convenience and without the gas company's consent. That was not right in front of my walk; it was a little north."

Other circumstances were offered tending to show that in alighting from the automobile Mrs. Allen fell astride of the curb of the street, and not into the ditch. Mrs. Allen further testified: "The first thing I said to Mrs. Fortenberry when I got to the front door was that I had fallen into the ditch, or something, and hurt myself; and later on Mr. Allen told her how I got hurt. I did not have to lay down when I was there. I was sick, and we only stayed a few minutes. * * * It had not rained that day. It had not rained at Fairlee, or at Commerce either, I don't suppose. It was not muddy there where I fell in the ditch. There was no water in the bottom of the ditch; there was no water anywhere around. I don't suppose there was any mud in the ditch; I would have had some mud on my clothes."

Mr. Allen testified substantially the same as appears in the above testimony of Mrs. Allen.

As to barriers and lights: The evidence in behalf of appellees goes to show that there was no light, block, or guard of any character around the excavation at the time to warn of the danger. Further, that the night was dark; that Mr. and Mrs. Allen lived at Fairlee, and not in Commerce; that Mrs. Allen did not know excavations were being made by the appellant. The evidence in behalf of the appellant goes to show that the employees had put out lanterns; that the street lights shown there; that the automobile of appellees was equipped with headlights.

■■ It is unnecessary to set out all the items of evidence as to the particular issues. After due consideration of the facts and circumstances in evidence, it is believed that this court would not be justified in holding that there is insufficient proof to pass to the jury for decision the particular issues under inquiry; and it is believed that this court, in its province, in relaton to matters of fact under inquiry, would not be warranted, under the established rules of law, in setting aside the verdict of the jury upon the ground that it is clearly contrary to the preponderance of the evidence. The facts and circumstances appearing, considered as a whole, are in apparent conflict. Substantial circumstances reflect that Mrs. Allen did not fall into the excavation, but fell upon the curb. Affirmative evidence goes to show that she did fall into the excavation, and that she suffered injury thereby. There is affirmative evidence that she has injuries. The extent of such injuries is rendered uncertain. Some evidence goes to show her present injury is largely due to a previously existing physical ailment. There is testimony of a grievous injury, according to medical evidence, immediately produced by a fall. There is ample proof that no barrier or light was at the time at or near the excavation. There is evidence to the contrary. There is evidence tending to show contributory negligence proximately causing the injury. There is evidence authorizing a different conclusion. The night was dark. It is elementary in civil cases that the preponderance of the proof, although merely so, is all that is necessary to establish the point in issue. It becomes the duty of the jury, as in their province, to say on whose side the weight of the evidence preponderates according to the reasonable probability of truth. In determining the ultimate fact, the jury may consider any circumstance or circumstances which afford an inference as to whether such fact under inquiry is true or false. The evidence of Mrs. Allen is not wholly or mainly inconsistent with the occurrence and existing circumstances as she claimed them to be. Therefore this court does not feel warranted in substituting its opinion for that of the jury.

The other two assignments of error relate to admission of evidence, and we think they do not present reversible error.

The judgment is affirmed.